(579 P.2d 164)

No. 49,134

H. Lynn White, Inc., *Appellant,* v. John T. Leftwich, *Appellee.*

Opinion filed May 26, 1978.

*Richard L. Reid,* of Kansas City, for the appellant.

*Robert E. Lastelic,* of Anderson, Granger, Nagels and Lastelic, Chartered, of Overland Park, for the appellee.

Before Parks, P.J., Abbott and Meyer, JJ.

Parks, J.: This is a suit brought by H. Lynn White, Inc. (hereafter referred to as plaintiff or White) against John T. Leftwich (defendant or Leftwich) for damages incurred from wrongful delivery of carpet valued at $1,867.42. The trial court, after hearing evidence, found in favor of defendant. Plaintiff appeals.

The lawsuit arose from a complex series of transactions involving the purchase, sale and delivery of the carpet. In early 1974, Mr. and Mrs. Kenton Granger ordered carpet for their home from Casa Bella, a Johnson County, Kansas, retail interior decorating firm. The Casa Bella representative who was responsible for the Granger transaction was John Harris. Because Casa Bella did not have the carpet in stock, Harris ordered it from plaintiff, a wholesale carpet dealer in Kansas City, Missouri. Casa Bella's delivery instructions requested that the carpet be shipped directly to the defendant, who was to install the carpet in the Granger home.

Plaintiff in turn ordered the carpet from a California mill for

delivery to defendant's place of business in Lenexa, Kansas. There had been no arrangements between plaintiff and defendant regarding the carpet, yet it was addressed to Decorator's Showroom, plaintiff's trade name, in care of defendant. The sidemarks read Casa Bella/Granger and Harris/Granger. The carpet arrived in two shipments, one on March 6, 1974, and another on April 17, 1974. It was later installed in the Granger home between May 8th and 15th, 1974.

After the carpet was delivered, defendant called the Grangers to set an installation date. Granger told defendant that he was not ready for the carpet because the painters were still working in his house. Granger also asked defendant, and defendant agreed, to hold the carpet for him until he was ready for the installation.

Following this conversation with Granger, defendant received a telephone call from plaintiff advising him not to release the carpet. Defendant admits receiving these instructions which were later reduced to writing on May 3 and May 6, 1974. However, he contends that the telephone calls and letters from the plaintiff were received after he had advised Granger that the carpet had arrived and after he had agreed to hold it for him. It appears from the record that Casa Bella "went into bankruptcy" in early May, 1974.

The trial court held that "(1) Under K.S.A. 84-2-702(1), where the seller discovers the buyer to be insolvent, he may refuse delivery except for cash and stop delivery of goods in the possession of seller's bailee under certain conditions as provided by K.S.A. 84-2-705. (2) The Defendant in the present case is a bailee of the carpet in question. (3) The seller (Plaintiff) could not stop delivery of the carpet after notification to the buyer (Granger) by the bailee (Defendant) that the bailee holds the goods for the buyer. K.S.A. 84-2-705(2)(b)."

The issue is whether plaintiff's order to stop delivery of the carpet was binding on the defendant. K.S.A. 84-2-705 provides:

"(1)  The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent. . . .

"(2)  As against such buyer the seller may stop delivery until

"(a)  receipt of the goods by the buyer; or

"(b)  acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or

"(c)  such acknowledgment to the buyer by a carrier by reshipment or as warehouseman. . . ."

The issue before us was addressed by the U.S. Court of Appeals in *Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583 (3rd Cir. 1975). There the court construed a New Jersey statute which is identical in pertinent part to K.S.A. 84-2-705 and held that the existence of a bailment relationship is a prerequisite to finding a third party liable for wrongful delivery of goods.

The *Donegal* facts are strikingly similar to those presently before this court. In both cases, the buyer requested that the seller ship the goods directly to a third party. Each seller complied with the shipping instructions but later became aware of the buyer's insolvency, at which time it ordered the third party who held the goods to stop delivery. No contractual relationship existed between the seller and the third party, and in both cases, the goods were delivered notwithstanding the stoppage order.

In refusing to penalize the third party in *Donegal,* the Court of Appeals reasoned that the concepts of 12A N.J.S.A. § 2-705 (like our K.S.A. 84-2-705) contemplate a bailment for mutual benefit. Shipment to a third party, rather than to the buyer directly, is merely an incident of accommodation resulting from the buyer and seller's contract as opposed to a bailment contract "voluntarily entered into" by the third party and the seller.

Kansas, like New Jersey, defines bailment for mutual benefit as follows:

"If the custody or use of the bailed article is incidental to some other business transaction between the parties, it may result in a bailment for mutual benefit, even though the loan is gratuitous and for the use of the bailee. 4 *Williston on Contracts* (*Rev. ed.* 1936), § 1040. Thus, if the gratuitous loan is made for trial purposes to induce a purchase . . . or if a promise, express or implied, that a later gratuitous loan will be made forms part of the consideration for the purchase, a bailment for mutual benefit results . . . ." (*Global Tank Trailer Sales v. Textilana-Nease, Inc.,* 209 Kan. 314, 316, 496 P.2d 1292 [1972], quoting the view expressed in *Nelson v. Fruehauf Trailer Co.,* 20 N.J. Super. 198, 202-203, 89 A.2d 455 [1952].)

See also *Adventure Line Mfg. Co. Inc. v. Western Casualty & Surety Co.,* 214 Kan. 820, 826, 522 P.2d 359 (1974).

Because the transaction in the present case is so closely akin to that of *Donegal,* we conclude that no bailment relationship existed between White and Leftwich. The delivery of the carpet to Leftwich rather than directly to Casa Bella or Granger was an incident of accommodation and not a bailment contract with White. In the absence of a bailment relationship, as contemplated

by K.S.A. 84-2-702 and K.S.A. 84-2-705, Leftwich may not be held liable for disregarding White's demand to withhold delivery of the carpet to Granger.

The conclusion we have reached makes it unnecessary for us to discuss the other points raised on appeal.

Judgment is affirmed.