**CERES INCORPORATED, Plaintiff,**

v.

**ACLI METAL & ORE COMPANY and Intsel Corporation, Defendants.**

**No. 77 C 2176.**

United States District Court, N. D. Illinois, E. D.

June 8, 1978.

R. R. McMahan, of Lord, Bissell & Brook, Chicago, Ill., for plaintiff.

James S. Montana, Jr., Chicago, Ill., for defendant ACLI Metal & Ore Co.

William J. Holloway, William G. Swindal, of Hinshaw, Culbertson, Moelmann & Hoban, Chicago, Ill., for defendant Intsel.

## MEMORANDUM OPINION

GRADY, District Judge.

On May 27, 1977, ACLI Metal & Ore Co. ("ACLI") agreed to sell Great Lakes Metal Corporation ("Great Lakes") approximately 300 metric tons of zinc which was being stored by Ceres, Incorporated ("Ceres") in Portage, Indiana. In exchange for the zinc, Great Lakes agreed to pay $.31¼ a pound net cash against a commercial invoice, delivery order, and weight/assay certificate and agreed to accept delivery at Ceres' Portage warehouse. (ACLI's First Amended Answer, Exhibit A). On that same day, ACLI sent a message to Ceres, ordering release of the zinc to Great Lakes effective May 31, 1977. (Complaint, Exhibit B). On May 26, 1977, Great Lakes agreed to sell 300 metric tons of zinc to Intsel Corporation ("Intsel") at $0.28 a pound, with delivery "free in warehouse" in the Chicago metropolitan area. (Answer of Intsel, Exhibit 1). On May 31, 1977, Great Lakes sent a message to Ceres, ordering release of the 300 tons of zinc to Intsel. (Answer of Intsel, Exhibit 2). Ceres had already delivered 40 tons to Intsel when on June 10, 1977, ACLI learned of Great Lakes' insolvency and wired Ceres to stop delivery of any more zinc pursuant to ACLI's May 27 message. (Answer of Intsel, Exhibit 6). Intsel also wired Ceres on June 10, demanding immediate delivery of the remaining 260 tons. (Answer of Intsel, Exhibit 8). Faced with these conflicting delivery orders, Ceres filed this interpleader, joining ACLI and Intsel as defendants. ACLI and Intsel have filed cross motions for summary judgment, along with supporting affidavits of their respective officers.

The contentions of ACLI and Intsel are fairly straightforward. ACLI claims that it is exercising its remedy of stopping delivery on the 260 tons still in Ceres' possession, thereby regaining the rights in the zinc which ACLI had before delivery to Great Lakes. U.C.C. § 2–705 & Comment 6. Intsel maintains that it was a bona fide purchaser of the zinc from Great Lakes. Intsel characterizes ACLI's requested relief as reclamation and observes that resale to a bona fide purchaser terminates the original seller's remedy of reclamation. U.C.C. § 2–702(3). Although the arguments are clear, neither party has satisfied the requirements for prevailing on a motion for summary judgment.

### ACLI's Motion for Summary Judgment

Throughout the transactions documented by the stipulated exhibits, the 260

tons of zinc was in the possession of Ceres, a field warehouseman. Ceres was acting, of course, as a bailee, and thus Article 7 of the Uniform Commercial Code controls the rights and remedies of the seller to the zinc. The pertinent section of Article 7 is § 7–504, which states: "Delivery pursuant to a non-negotiable document may be stopped by a seller under Section 2–705, and subject to the requirement of due notification there provided." U.C.C. § 7–504(4).[1] The section which is incorporated by reference provides:

(1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent . . .

(2) As against such buyer the seller may stop delivery until

(a) receipt of the goods by the buyer; or

(b) acknowledgement to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or

(c) such acknowledgement to the buyer by a carrier by reshipment or as warehouseman; or

(d) negotiation to the buyer of any negotiable document of title covering the goods.

U.C.C. § 2–705(1)–(2). To invoke the remedy provided by this section, the seller ACLI must show that none of the four events listed under section (2) have occurred. Based on the uncontroverted facts, ACLI has succeeded as to subsections (a) and (c) but not as to (b) and (d). " 'Receipt' of goods means taking physical possession of them." U.C.C. § 2–103(1)(c). Throughout the series of transactions giving rise to this lawsuit, the 260 tons of zinc have always been in the actual physical possession of Ceres, and therefore the buyer Great Lakes or the sub-buyer Intsel have not received this zinc in the manner specified in subsection (a). Intsel argues that once Ceres received the delivery order issued by ACLI in favor of Great Lakes, Ceres became the agent of the buyer Great Lakes. *Marshall Milling Co. v. Rosenbluth*, 231 Ill.App. 325 (1924). As agent of the buyer, Ceres could acquire actual possession of the zinc on the buyer's behalf and terminate the seller's remedy of stopping delivery. Anderson, Uniform Commercial Code § 2–705:24, pp. 369–370 (2d ed. 1971). Although, under general principles of law, the buyer's agent may be able to obtain actual possession of the goods for the buyer, these general rules do not apply when the agent obtaining possession is also a bailee. The reason is clear: U.C.C. § 2–705 specifically addresses the question of when a bailee is holding goods for the buyer and it specifically defines the two circumstances converting the bailee from seller's agent to the buyer's agent in subsections (b) and (c). It is only in the absence of such specific statutory treatment that the Code should be supplemented by general principles of agency law. U.C.C. § 1–103. Therefore, Intsel's argument must fail, and ACLI's remedy of stopping delivery is not terminated by subsection (a). The reshipment subsection is also inapplicable. Although the language of subsection (c) is not particularly clear, the comments demonstrate that the subsection only applies to carriers having a shipment contract with either the buyer or seller or to carriers who subsequent to their shipment contract agree in a second contract to act as warehouseman for the goods. U.C.C. § 2–705, Comment 3. In the complaint, Ceres de-

1. U.C.C. § 2–503 defines the time at which delivery was accomplished in the sale between ACLI and Great Lakes. According to that section, "where goods are in the possession of a bailee and are to be delivered without being moved . . . (b) tender to the buyer of a non-negotiable document of title or of a written direction to the bailee to deliver is sufficient tender unless the buyer seasonably objects." Ill.Rev.Stat. ch. 26, § 2–503(4). The contract of sale between ACLI and Great Lakes specified Ceres' warehouses as the place of delivery, clearly contemplating a delivery without moving the zinc. Since ACLI sent written directions to Ceres ordering delivery to Great Lakes and Great Lakes never objected, the requirements of § 2–503(4) were satisfied. Ironically, such a delivery to the buyer under this section does not impair the seller's remedy of stopping delivery. Carter, *infra*. Only those events specified in § 2–705(2) or in sections of the Code having general applicability will terminate this seller's remedy.

scribes itself as a general stevedore and manager of warehouse terminals. (Complaint, par. 1). In this case, none of the parties has attached exhibits or affidavits which suggest that Ceres was ever acting as carrier. To the contrary, Intsel's submission of a release ordering Ceres to deliver the zinc to Condin Motor Freight confirms that Ceres was not acting as carrier for Intsel. Therefore, subsection (c) does not operate to terminate the seller's remedy of stopping delivery.

ACLI, however, has not demonstrated the inapplicability of subsection (b). Attached to the complaint is a telex message ACLI sent to Ceres, ordering release of the zinc to the buyer Great Lakes. Attached to Intsel's answer is a telex message Great Lakes sent to Ceres, ordering the release of the zinc to Intsel. Neither of these telex messages originated with Ceres and thus cannot qualify as the bailee's acknowledgement. Both of the messages, however, refer to prior telephone calls between the sender and the bailee. Making all factual inferences favorable to the non-moving party, as we must on a motion for summary judgment, we think it possible to infer that during one of these telephone calls Ceres acknowledged it was holding the zinc either for the original buyer Great Lakes or for the sub-buyer Intsel. Either acknowledgement would satisfy subsection (b), and therefore ACLI's motion must be denied. Carter, Acquisition and Loss of Rights of Buyers and Sellers to Goods under the Uniform Commercial Code, 6 B.C.Indus. & Com.L.Rev. 169 (1964).

In addition, ACLI has failed to show the inapplicability of subsection (d). The parties have attached a series of delivery orders, from ACLI to Great Lakes, from Great Lakes to Intsel, and from Intsel to its carrier. In these delivery orders, the sender refers to bills of lading # 1, 2 and 3, which apparently were issued to Great Lakes as part of the sale by ACLI. These bills of lading have not been attached, and we are therefore unable to determine whether they are negotiable or non-negotiable. Absent such a submission, ACLI has failed to demonstrate the inapplicability of subsection (d).

### Intsel's Motion for Summary Judgment

■ Intsel's primary legal argument in favor of granting its motion for summary judgment is that ACLI is, in essence, seeking reclamation and that Intsel, as a bona fide purchaser, cuts off the remedy of reclamation. This argument depends upon § 2–702 for its support. That section provides: "Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt." U.C.C. § 2–702(2). The event which triggers the applicability of this section is the buyer's receipt of the goods. According to the Code definition, receipt means "taking physical possession of them [the goods]," or when, as in this case, the goods are being held by a bailee, receipt may include the bailee's acknowledgement that he is holding the goods for the buyer. U.C.C. § 2–103(1)(c); Ill.Ann.Stat. ch. 26, § 2–702 (Smith-Hurd), Illinois Code Comment to Subsection (2); Buss v. Long Island Storage Warehouse Co., 64 F.2d 338 (2d Cir. 1933). As we stated in our earlier analysis, neither the buyer Great Lakes nor the sub-buyer Intsel has taken actual physical possession of the 260 tons of zinc. From the submissions presented, we cannot discern whether the buyer or sub-buyer received the 260 tons of zinc through the alternative means of the bailee's acknowledgement. Therefore, the remedy of reclamation does not appear to be available to the seller, and Intsel's defense of bona fide purchase must derive from another section of the Code.

ACLI, of course, is pursuing its remedy under § 2–705 of stopping delivery before the goods are in the buyer's actual possession rather than the remedy under § 2–702 of reclaiming goods already delivered into the buyer's actual possession. In the section on stopping delivery, the Code defines four events which terminate this seller's remedy. As its alternative argument, Intsel asserts that a fifth event should be added to this list by implication: the buyer's resale to a bona fide purchaser. Int-

sel's premises may be formulated in the following manner. U.C.C. § 2–705 specifies four events which terminate the seller's remedy, and due to this specificity, these four events may be presumed exclusive. By its own terms, however, U.C.C. § 2–705 applies only "as against such buyer;" it is silent on its application to third parties, such as bona fide purchasers. In the absence of such a statement, the general section defining the rights of bona fide purchasers, § 2–403, should be read to supplement § 2–705. Under U.C.C. § 2–403, a bona fide purchaser shall prevail over a seller seeking to stop delivery.

Intsel, however, has failed to demonstrate the applicability of the bona fide purchaser section to this suit. U.C.C. § 2–403 provides in pertinent part: "A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though . . . (b) the delivery was in exchange for a check which is later dishonored." U.C.C. § 2–403(1). The critical event which confers power upon the buyer to transfer good title to a bona fide purchaser occurs "when goods have been delivered." The Code defines delivery for instruments, documents of title, and chattel paper but not for goods. U.C.C. § 1–201(14). In the context of a bailment, however, the common law has evolved a clear meaning for the term delivery. "Goods are not delivered . . . until the buyer has secured control of them. Until attornment to him by the bailee, the buyer is one step removed from control." Carter, Acquisition and Loss of Rights of Buyers and Sellers to Goods under the Uniform Commercial Code, 6 B.C.Indus. & Com.L.Rev. 169, 174 & n. 25 (1964). As we noted in our earlier discussion, the Code also refuses to find sufficient control in the buyer to infer delivery until the bailee attorns to the buyer. U.C.C. § 2–705(2)(b). In the present case, Ceres

never delivered actual physical possession of the 260 tons to Great Lakes. From the submissions, it is unclear whether Ceres attorned to Great Lakes or Intsel, but on Intsel's motion for summary judgment, we must adopt all inferences most favorable to the non-movant and must therefore infer that Ceres never attorned to the buyer or sub-buyer. Without attornment by the bailee to the buyer, the zinc was never delivered to the buyer, and without delivery, the buyer did not obtain power under § 2–403 to confer good title upon the bona fide purchaser, Intsel. Therefore, Intsel has failed to demonstrate that it should receive the protection of U.C.C. § 2–403.

In its final argument, Intsel asserts that Ceres' attornment should be implied from its conduct of delivering the first 40 tons of zinc to Intsel. As a matter of strict logic, Intsel's implied attornment argument would seem to make § 2–705(2)(a) superfluous, for according to this argument, a bailee's partial delivery of physical possession to the buyer would operate as an implied acknowledgement as to all the goods held by the bailee.[2] In such case, subsection (2)(b) would inevitably render subsection (2)(a) nugatory as a means of terminating the seller's right to stop delivery on the goods remaining in the bailee's possession. We do not rest our decision, however, on this ground. Neither side has cited cases or Code comments which either support or reject Intsel's argument. When the Code is silent on a subject, we believe the proper course requires an inquiry into the usages of trade. U.C.C. § 1–205. Naturally, demonstration of a trade usage permitting implied acknowledgement by a bailee requires the development of facts surrounding modern commercial transactions, U.C.C. § 1–102(2)(b), and such a factual inquiry is inappropriate on a motion for summary judgment. Therefore, Intsel's motion for summary judgment on this issue must be denied.

2. It is significant that the two means of delivery recognized by U.C.C. § 2–403, actual physical possession and the bailee's attornment, are the first two means specified by U.C.C. § 2–705(2) for terminating the seller's remedy of

stopping delivery. We assume that Intsel's implied attornment argument applies under both sections. Likewise, our comments on U.C.C. § 2–705 apply with equal force to "delivery" as used in U.C.C. § 2–403.

*Zuccarelli Affidavit*

Intsel has moved to strike the affidavit of ACLI's vice president, Vincent Zuccarelli, because it contains numerous conclusions of law. Although we agree with Intsel that this affidavit contains conclusions of law, we believe striking the affidavit in its entirety is too harsh a sanction. Instead, we will disregard those conclusions of law and deny Intsel's motion.