**In re SUMMIT CREEK PLYWOOD COMPANY, INC., dba Summit Creek Forest Products Corp., Bankrupt.**

**Robert BUTTS, Trustee in Bankruptcy of Summit Creek Plywood Company, Plaintiff,**

v.

**ROSBORO LUMBER COMPANY, and Walter E. Heller Western, Inc., Defendant.**

**Civ. No. B78–00911 (C–23).**

United States District Court, D. Oregon.

June 26, 1980.

Stephen B. Herrell, McMenamin, Joseph, Herrell & Paulson, Portland, Or., for Robert Butts, trustee in bankruptcy.

Randall Bryson, Bryson & Bryson, Eugene, Or., for defendant Rosboro Lumber Co.

Michael H. Schmeer, Douglas C. Beckman, Black, Kendall, Tremaine, Boothe & Higgins, Portland, Or., for defendant Walter E. Heller Western, Inc.

PANNER, District Judge:

Plaintiff, Robert Butts, is the Trustee in Bankruptcy of the estate of Summit Creek Plywood, Inc. (Bankrupt). He brought this summary proceeding in United States Bankruptcy Court to declare the rights of the parties to the assets in question. Defendant Rosboro Lumber Company (Rosboro) moved to dismiss the proceeding for lack of jurisdiction. This motion was denied both initially and on reconsideration. The plaintiff then moved for summary judgment, which motion was granted by the Bankruptcy Court. Judgment was entered for the plaintiff against Rosboro in the amount of $40,377.60, plus interest. Rosboro appeals pursuant to 28 U.S.C. § 1334 and Rule 810, Rules of Bankruptcy Procedure, 11 U.S.C. The judgment is reversed.

## FACTS

Rosboro sold two carloads of plywood to the bankrupt on April 20, 1978. On instructions from the Bankrupt, Rosboro shipped the goods by uniform straight bill of lading on April 24, consigned to Koppers, Inc., in care of West Coast Forest Industries, the subpurchaser. Rosboro's invoice to Summit was dated April 26. On April 28, Rosboro received notice of the Bankrupt's precarious financial position and issued an order that the carrier stop delivery. The carrier obeyed the stop order and retained physical possession of the goods on the date the petition in bankruptcy was filed, May 3, 1978.

At some point prior to or after shipment the Bankrupt resold the goods and consigned the goods directly to the subpurchaser. Bankrupt's invoice indicating a sale to West Coast is dated April 25, but bears the notation that it cancels and supersedes an invoice dated April 21. Bankrupt assigned the account receivable arising from the sale to its financing factor Walter E. Heller Western, Inc. (Heller), on April 25, 1978.

## ISSUES ON APPEAL

1. Whether the Bankruptcy Court erred in failing to dismiss the case for lack of jurisdiction; and

2. Whether the Bankruptcy Court erred in granting plaintiff's motion for summary judgment.

## STANDARD OF REVIEW

Rule 810 provides that:

Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.

Rules Bankr.Proc. Rule 810, 11 U.S.C. When purely legal issues are raised on appeal, the clearly erroneous standard is not applicable. *In re Meade Land & Development Co.*, 527 F.2d 280, 283 (3d Cir. 1975). Where the question presented is solely one of law, no presumption of correctness applies. The bankruptcy judge's legal conclusions are subject to this court's independent determination of the legal questions. *In re Gilchrist Co.*, 410 F.Supp. 1070, 1074 (E.D. Pa.1976).

## DECISIONS OF BANKRUPTCY COURT

The Bankruptcy Court granted plaintiff's motion for summary judgment, holding that:

[T]he direct shipment of goods to a subpurchaser of the bankrupt terminates the original seller's right to stoppage in transit. Rosboro's right to stoppage in transit was terminated by the direct shipment of goods to the bankrupt's subpurchaser. Because the right to stoppage was terminated, it follows that, as between Rosboro and the bankrupt, the bankrupt was entitled to possession of the goods in question on the date the petition was filed. Rosboro's action in exercising control over Summit Creek's goods constitutes a wrongful interference with assets of the bankrupt.

Memorandum Opinion at page 2 (Feb. 20, 1980). In denying Rosboro's motion to dismiss, the Bankruptcy Court had previously held that:

Delivery of the goods to a carrier for delivery to a subpurchaser from the original buyer is a reshipment within the meaning of the statute. Such a delivery is an acknowledgment by the seller of the right of the purchaser to exercise control over the shipment and terminates the right to stop in transit . . . .

At the time of bankruptcy the goods in question were in the physical possession of a carrier who was holding them as the agent of the bankrupt subject to no right by defendant Rosboro to stoppage in transit.

Memorandum Opinion at page 3 (Mar. 8, 1979).

## STATUTE INVOLVED

ORS 72.7050:

*Seller's stoppage of delivery in transit or otherwise.*

(1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent as provided in ORS 72.7020 . . . .

(2) As against such buyer the seller may stop delivery until:

(a) Receipt of the goods by the buyer; or

(b) Acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or

(c) Such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or

(d) Negotiation to the buyer of any negotiable document of title covering the goods.

## COMMENTS TO THE UCC

ORS 72.7050 is a section of the Uniform Commercial Code as enacted by the Oregon Legislature. The Official Comments to the parallel section of the Code, UCC 2–705, provide that:

2. "Receipt by the buyer" includes receipt by the buyer's designated representative, the subpurchaser, when shipment is made direct to him and the buyer himself never receives the goods. It is entirely proper under this Article that seller, by making such direct shipment to the sub-

purchaser, be regarded as acquiescing in the latter's purchase and as thus barred from stoppage of the goods as against him.

As between the buyer and the seller, the latter's right to stop the goods at any time until they reach the place of final delivery is recognized by this section.

. . . . .

3. A diversion of a shipment is not a "reshipment" under subsection (2)(c) when it is merely an incident to the original contract of transportation. Nor is the procurement of "exchange bills" of lading which change only the name of the consignee to that of the buyer's local agent but do not alter the destination of a reshipment.

Acknowledgment by the carrier as a "warehouseman" within the meaning of this Article requires a contract of a truly different character from the original shipment, a contract not in extension of transit but as a warehouseman.

## DISCUSSION

■ A bankruptcy court lacks summary jurisdiction to decide disputes relating to goods that are not within the actual or constructive possession of the court. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1940). Here there is no disagreement that the goods were in possession of the carrier at the time of the bankruptcy. Where possession is in a third person at the time of bankruptcy, the court has constructive possession of the goods only if that person is holding the goods as the agent for or subject to the demand of the bankrupt. *Baker & Taylor Drilling Co. v. Stafford*, 369 F.2d 551 (9th Cir. 1966).

■ In granting plaintiff's motion for summary judgment, the Bankruptcy Court held that Rosboro's action in exercising control over Bankrupt's goods constituted a wrongful interference with the Bankrupt's property, because Rosboro's right to stop the goods in transit was terminated by the direct shipment of the goods to Bankrupt's subpurchaser.

The facts relevant to this stoppage in transit question are not in dispute. Rosboro shipped the goods directly to Koppers in care of West Coast according to directions given to Rosboro by Bankrupt. Sometime after the goods were shipped the Bankrupt sold the goods. The carrier, in shipping the goods and in stopping that shipment, took instructions only from Rosboro. The Bankrupt was insolvent at the time Rosboro issued the stop order to the carrier.

The seller's right to stop goods in transit is limited by ORS 72.7050. Under the facts of this case, subsection (2)(c) determines the rights of the parties. The issue is whether Rosboro's shipment of the goods directly to Koppers constitutes "such acknowledgment to the buyer by a carrier by reshipment or as warehouseman" so as to cut off Rosboro's right to stop the goods.

A plain reading of the statute would indicate that Rosboro's right to stop was not terminated because there was no "acknowledgment" to the Bankrupt by the carrier or by anyone else.[1] The carrier at no time communicated in any manner with Bankrupt. While it appears that the phrases "by reshipment" and "as warehouseman" modify the noun "carrier," the parties and the

---

1. Regarding what kind of "acknowledgment" or "attornment" is required under this subsection, one commentator has stated:

There should be notification to the carrier or other bailee of the buyer's right to the goods and such notification should stem from the buyer himself. In addition to the notification from the buyer, there should be some acknowledgment forthcoming from the carrier or other bailee that the bailee is holding the goods for the buyer or that the carrier acquiesces to the reshipment order given by the

buyer or is holding the goods on his behalf as warehouseman. When such situations occur, the seller moves out of the picture and the buyer steps into his position as the one entitled to the goods. Once this occurs, the seller's right to stop delivery is lost.

3A Dusenberg & King, Sales and Bulk Transfers under the Uniform Commercial Code § 13.04[2][a] (1980). *See also Interlake, Inc. v. Kansas Power & Light Co.*, 79 Ill.App.3d 679, 34 Ill.Dec. 954, 398 N.E.2d 945, 949 (1979).

Bankruptcy Court dealt with the statute as if it read "acknowledgment by reshipment". The Court then held that direct shipment to the subpurchaser was a reshipment within the meaning of subsection (2)(c) which cut off Rosboro's right to stop transit.

The Official Comments to the UCC provide some clarification as to this admittedly confusing[2] statutory provision. The comments state:

> It is entirely proper under this Article that the seller, by making such direct shipment to the subpurchaser, be regarded as acquiescing in the latter's purchase and as thus barred from stoppage of the goods *as against him.*
>
> *As between the buyer and the seller, the latter's right to stop the goods at any time until they reach the place of final delivery is recognized* by this section. (emphasis added).

These comments indicate that, as between the subpurchaser (Koppers) and the seller (Rosboro), the right of Rosboro to stop the goods in transit was cut off by direct shipment to Koppers, even prior to receipt by Koppers. *See Interlake, Inc. v. Kansas Power & Light Co.,* 79 Ill.App.3d 679, 34 Ill.Dec. 954, 398 N.E.2d 945 (1979). However, Koppers has not asserted any claim to the goods and is in no way involved in this action.[3] The only interests being adjudicated are those of the Bankrupt and Rosboro. As between these two, Rosboro's right to stoppage was not cut off by acquiescence in the direct shipment to Koppers. Such a shipment is an accommodation resulting from the contract between the two. *See H. Lynn White, Inc. v. Leftwich,* 2 Kan.App.2d 341, 579 P.2d 164 (1978). It does not by itself waive any statutory rights of the seller. Nor are the seller's rights against the buyer under ORS 72.7050 in any way dependent upon whether or not a sale has been arranged or made to a third party. No case has been cited to the Court holding that direct shipment to a subpurchaser constitutes a reshipment under UCC 2–705(2)(c). Prior to the adoption of the UCC, the Oregon Supreme Court upheld a very broad stoppage in transit power with regard to goods en route to a subpurchaser. *Weyerhaeuser Co. v. First National Bank,* 150 Or. 172, 38 P.2d 48 (1934). *Accord, Clock v. Missouri-Kansas-Texas Railroad Co.,* 407 F.Supp. 448 (E.D.Mo.1976).

It is the opinion of this Court that direct shipment of goods by the seller to the subpurchaser pursuant to contract with the buyer does not constitute a reshipment within the meaning of ORS 72.7050. Nor does such shipment constitute an acknowledgment by the carrier that it holds for the buyer. Therefore, Rosboro's right to stop delivery prior to receipt by the subpurchaser was never terminated. At the time of the filing of the petition in bankruptcy, the carrier held the goods as the agent of Rosboro, not of Bankrupt. Neither the Bankrupt nor the Bankruptcy Court had constructive possession of the goods. The Court, therefore, lacked jurisdiction to adjudicate the Trustee's claim to the goods.

IT IS ORDERED that the judgment of the Bankruptcy Court, entered February 20, 1980, is hereby reversed. The proceeding is dismissed for lack of jurisdiction.

---

**2.** *See Ceres, Inc. v. ACLI Metal & Ore Co.,* 451 F.Supp. 921, 923 (N.D.Ill.1978).

**3.** Heller, the factor, asserted a right to the goods pursuant to Summit's assignment to Heller of its account receivable. The Bankruptcy Court awarded judgment to plaintiff trustee, subject to the security interest of Heller. Heller's security interest becomes effective only if and when the debtor acquires rights in the collateral. ORS 79.2030(1)(c). If Summit never acquired rights in the goods superior to those of Rosboro, then Heller's security interest is not enforceable against Rosboro. ORS 72.-7050 does not limit the rights of a seller who rightfully stops goods in transit to those of a good faith purchaser or lien creditor.