**In re KELLSTROM INDUSTRIES, INC., et al., Debtors.**

**No. 02–10536 MFW.**

United States Bankruptcy Court, D. Delaware.

Aug. 20, 2002.

Norman L. Pernick, Domenic E. Pacitti, Maria Aprile Sawczuk, Saul Ewing, LLP, Wilmington, DE, Jeffrey C. Hampton, Saul Ewing, LLP, Philadelphia, PA, for debtors.

Steven M. Yoder, The Bayard Firm, Wilmington, DE, Carol Neville, Sonnenschein, Nath & Rosenthal, New York City, for the Official Committee of Unsecured Creditors.

Annie Verdries, Lewis, D'Amato, Brisbois & Bisgaard, LLP, Costa Mesa, CA, for American Valley Aviation, Inc.

Mark D. Collins, Richards Layton & Finger, P.A., Wilmington, DE, C. Edward Dobbs, Parker Hudson Rainer & Dobbs, LLP, Atlanta, GA, for Agent Bank of America, N.A.

Don A. Beskrone, Wilmington, DE, Office of the United States Trustee.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Objection of American Valley Aviation ("AVA") to the

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure

Motion of Kellstrom Industries, Inc. and certain of its affiliates ("the Debtors") for an Order Approving the Sale of Certain of Debtors' Assets. An Order approving the Debtors' sale of assets, without the AVA inventory, was previously entered, reserving the issue of whether the Debtors could sell the AVA inventory free and clear of AVA's interests.

## I. BACKGROUND

The Debtors were in the business of purchasing, overhauling, reselling and leasing aircraft engines and parts. On April 5, 2001, the Debtors entered into a Sale and Purchase Agreement ("the Agreement") with AVA. Pursuant to the Agreement, AVA agreed to sell its P–3 Orion inventory of aerospace components and parts ("the Parts") to the Debtors. Under the Agreement, the purchase price for the Parts was $5,038,000, payable by the Debtors as follows: (1) the sum of $1,750,000 within twenty-one days after execution of the Agreement and (2) the remaining balance of $3,288,000 in twenty-four consecutive equal monthly installments of $137,000. (Exhibit D–1, § 2.) While the Debtors got title to the Parts upon execution of the Agreement, AVA retained possession of the Parts. (*Id.* at § 3.) For an additional monthly fee of $8,000, AVA provided various services, including storage, packing, shipping and certification of the Parts to third-party buyers at the Debtors' direction. (*Id.* at § 4.)

On December 14, 1998, prior to its Agreement with AVA, the Debtors had executed a Loan and Security Agreement with the Bank of America ("BOA"). Under that agreement, BOA asserts it obtained a security interest in substantially all of the Debtors' property.

On February 20, 2002, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On that same date, the Debtors entered into an Asset Sale Agreement with KIAC, Inc. ("KIAC") to sell certain assets. On February 22, 2002, the Debtors filed a Motion for approval of that sale free and clear of all liens, claims and encumbrances under section 363 of the Bankruptcy Code ("the Sale Motion").

On May 8, 2002, AVA sent a letter notifying the Debtors of AVA's intent to reclaim all Parts not yet received by the Debtors. (AVA's Exhibit E.) On May 10, 2002, AVA filed an Objection to the Sale Motion ("the Objection"), asserting that the Debtors did not have the right to sell the Parts to KIAC. On May 17, 2002, a hearing was held to consider the Sale Motion.

· After resolution of all other objections to the sale, an Order was entered on June 13, 2002, authorizing the sale of the Debtors' assets to KIAC with the exception of the AVA Parts, pending a determination of the various parties' interests in the Parts. (Order at ¶ 19.) Briefs have been submitted on the issue by the Debtors, AVA and BOA.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (K), (N), and (O).

## III. DISCUSSION

Although the parties have raised numerous other arguments,[2] we focus here only

---

7052 as made applicable to contested matters pursuant to Rule 9014.

**2.** AVA argued, alternatively that: (1) it retained title to the Parts, (2) it had a purchase money security interest in the Parts, (3) it had a warehouseman's or possessory security interest in the Parts, (4) it had a right of reclamation, (5) the Agreement was executory, requiring its assumption before the Debtors

on the issues which we find relevant to determining what interest AVA has in the Parts and under what circumstances the Debtors can sell the Parts free and clear of that interest.

### A. *AVA's Right to Withhold and Stop Delivery*

AVA asserts that it has the right to withhold and stop delivery of the Parts that remain in its possession, under section 2–702(*l*) of the Uniform Commercial Code ("the UCC").[3] That section provides that:

Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article (Section 2–705).

U.C.C. § 2–702(1). The seller may withhold and stop delivery of the goods until:

(a) receipt of the goods by the buyer; or

(b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or

(c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or

(d) negotiation to the buyer of any negotiable document of title covering the goods.

U.C.C. § 2–705(2). AVA asserts that, because the Parts have never left its possession, it can withhold and stop delivery of the Parts to the Debtors or any of its designees.

The Debtors assert that title to the Parts determines whether they can sell the Parts. Section 2–401(1) of the UCC provides that "title to goods passes from seller to buyer in any manner and on any conditions explicitly agreed on by the parties." U.C.C. § 2–401(1). The Agreement provides that:

[The Debtors] and [AVA] hereby agree that after the [$1,750,000 payment], title to ½ (one-half) of the Parts [whose value is equal to ½ (one-half) of the total purchase price ... which is $2,519,000.00 (two million five hundred and nineteen thousand and no/100)] shall immediately pass from [AVA] to [the Debtors]; and that the remaining ½ (one-half) title to the Parts shall pass from [AVA] to [the Debtors] on January 2, 2002.

(Exhibit D–1 at § 3.) Thus, the Debtors assert that as of January 2, 2002, they had title to the Parts and they are free to sell the Parts to KIAC notwithstanding AVA's right to withhold and stop delivery of the Parts.

However, section 2–401 of the UCC provides that:

Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties *applies irrespective of title* to the goods except where the provision refers to such title.

U.C.C. § 2–401 (emphasis added). Thus, we conclude that the passage of title does not eliminate or impair AVA's right to withhold and stop delivery of the Parts. *See, e.g., In re Murdock Mach. and Engineering Co. of Utah*, 620 F.2d 767, 773 (10th Cir.1980).

---

could sell the Parts and (6) it had the right to withhold and stop delivery of the Parts.

**3.** The Debtors contend that Delaware law controls, whereas AVA contends that either California or Florida law applies. Since all of the applicable statutes relevant to this Opin-

ion contain the identical provisions we will refer to the UCC as opposed to a state specific statute. Revised Article 9, which became effective on July 1, 2001, governs the transactions in question. U.C.C. § 9–701.

Moreover, Official Comment 1 to section 2–702 of the UCC supports this interpretation, stating that "[t]he seller's right to withhold the goods or to stop delivery except for cash when he discovers the buyer's insolvency is made explicit in subsection (1) *regardless of the passage of title.*" U.C.C. § 2–702 cmt. 1 (emphasis added).

■ Alternatively, the Debtors argue that the Parts were constructively delivered to the Debtors when title to the Parts transferred on January 2, 2002, and that such constructive delivery terminated AVA's right to stop delivery. U.C.C. § 2–705(2). The Debtors argue that by passage of title, constructive delivery of the goods was effected, despite the fact that the Parts remained in AVA's possession. The Debtors rely on *In re GEC Industries,* 128 B.R. 892 (Bankr.D.Del.1991) which held that "there may be completed delivery although the [Parts] remain in the possession of the seller if the seller's possession is as an agent or at the request of the buyer under an agreement." 128 B.R. at 898.

The Debtors' reliance on *GEC Industries* is misplaced. The issue in *GEC Industries* was whether constructive "delivery" to the buyer effected a transfer of title. *GEC Industries* did not deal with the conflict between the seller's right to withhold and stop delivery of goods and the buyer's title to those goods.

■ The Debtors assert "delivery" of the Parts terminates the seller's right to withhold and stop delivery as opposed to taking physical possession of the Parts. However, a seller's right to stop delivery exists until "receipt" of the goods by the buyer. U.C.C. § 2–705(2)(a). The UCC defines " 'receipt' of goods as taking physical possession of them." UCC § 2–103(*l* )(c). Thus, the Debtors' argument

that "constructive" delivery constitutes receipt is not persuasive.

Further, the Official Comment to section 2–103(*l* )(c) highlights the distinction between "delivery" (when title passes) and "receipt" (when the seller's right to stop delivery ends):

> "Receipt" must be distinguished from delivery particularly in regard to the problems arising out of shipment of goods, whether or not the contract calls for making delivery by way of documents of title, since the seller may frequently fulfill his obligations to "deliver" even though the buyer may never "receive" the goods.

U.C.C. § 2–103 cmt. 2.

Therefore, the "delivery" of the goods or transfer of title alone cannot constitute "receipt" of goods, which requires transfer of actual physical possession. *See, e.g., In re Marin Motor Oil, Inc.,* 740 F.2d 220, 224–25 (3d Cir.1984); *Ceres, Inc. v. ACLI Metal & Ore Co.,* 451 F.Supp. 921, 923 (N.D.Ill.1978); *In re Maloney Enterprises, Inc.,* 37 B.R. 290, 294 (Bankr.E.D.Ky. 1983).

Although title to the Parts passed to the Debtors on January 2, 2002, we conclude that AVA had the right to withhold and stop delivery of the Parts so long as they remained in its possession.

### B. Conflicting Interests of the Debtors, AVA and BOA

■ BOA asserts that any interest that AVA might have is subordinate to the security interest of BOA in all the property of the Debtors. BOA further asserts that because it perfected its lien pursuant to Article 9 of the UCC before AVA's interest arose, the rights of AVA are subordinate to it.

Section 9–110 of the UCC is instructive and provides that:

A security interest arising under Section 2–401, 2–505, 2–711(3), or 2A–508(5) is subject to this article. However, until the debtor obtains possession of the goods:

> (1) the security interest is enforceable, even if Section 9–203(b)(3) has not been satisfied;
>
> (2) filing is not required to perfect the security interest;
>
> (3) the rights of the secured party after default by the debtor are governed by Article 2 or 2A; and
>
> (4) the security interest has priority over a conflicting security interest created by the debtor.

U.C.C. § 9–110. This section details the rights of Article 2 security interest holders under Article 9. However, the right of a seller to stop delivery (section 2–702($l$)) is not covered by this section. Official Comment 5 to section 9–110 discusses the right to withhold and stop delivery and provides that:

> This Article does not specifically address the conflict between (i) a security interest created by a buyer or lessee and (ii) the seller's or lessor's right to withhold delivery under Section 2–702($l$), 2–703(a), or 2A–525, the seller's or lessor's right to stop delivery under Section 2–705 or 2A–526, or the seller's right to reclaim under Section 2–507(2) or 2–702(2). *These conflicts are governed by the first sentence of Section 2–403(1), under which the buyer's secured party obtains no greater rights in the goods than the buyer had or had power to convey,* or Section 2A–307(1), under which creditors of the lessee take subject to the lease contract.

U.C.C. § 9–110 cmt. 5 (emphasis added).

Section 2–403(1) of the UCC provides that "A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased." U.C.C. § 2–403(1).

With respect to a seller's right to withhold and stop delivery, commentators have interpreted Official Comment 5 as follows:

> To translate: the position of the Reporters for Revised Article 9 is that the buyer's secured creditor is a purchaser but gains a security interest only in the interest of the buyer. It is not that the buyer has no rights, but has insufficient rights to give a security interest that will defeat the seller's right to withhold or stop the goods. The buyer's secured creditor steps into the shoes of the buyer. Where the seller refuses delivery because of the buyers [sic] insolvency, the secured creditor could terminate the seller's right to withhold by making a cash payment for the goods just as the buyer may.

1A Peter F. Coogan, Secured Transactions Under the Uniform Commercial Code, § 7D.03[6][b], 7D–15 (Matthew Bender 2002). *See also* 9A William D. Hawkland, Uniform Commercial Code Series, [Rev] § 9–110:1, pp. 550–52 (2000).

Therefore, BOA's rights to the Parts rise no higher than the Debtors' rights. If the Debtors or BOA want to terminate the right of AVA to withhold and stop delivery of the Parts, then they have to make a cash payment for the Parts in accordance with section 2–702(1). Such an analysis is consistent with the reluctance of courts to permit good faith purchasers or secured lenders of the buyer to prevail over a seller that has retained possession of goods. *See, e.g., Crocker National Bank v. Ideco Div. of Dresser Industries, Inc.,* 839 F.2d 1104, 1109 (5th Cir.1988) (where the seller has never relinquished possession of the goods, a non-paying buyer does not have a sufficient right in the collateral to

enable him to transfer a security interest in them to a third party); *Murdock Mach.*, 620 F.2d at 774 (seller's refusal to deliver goods in his possession to an insolvent buyer is not affected by intervention of third-party good-faith purchaser). Therefore, we conclude that the rights of AVA are not subordinate to the rights of BOA.

## C. *Sale under Section 363*

Pursuant to the Sale Motion, the Debtors seek to sell the Parts to KIAC free and clear of all interests. Section 363(f) provides that:

the trustee may sell property ... free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens. *See, e.g., In re Elliot*, 94 B.R. 343, 345 (E.D.Pa.1988).

■ Section 363(f)(1) is not applicable because non-bankruptcy law does not per-

mit a sale by the Debtors free and clear of AVA's right to withhold and stop delivery.[4] *See, e.g., Murdock*, 620 F.2d at 774; *Ceres*, 451 F.Supp. at 925 (seller of goods in hands of bailee was not barred from stopping delivery of goods to bona fide purchaser from buyer when seller discovered buyer's insolvency). Section 363(f)(2) is not applicable because AVA has not consented to the sale of the Parts free and clear of its interests.

■ Section 363(f)(3) allows a sale if the interest is a lien and the sale proceeds are greater than the value of all liens on the property. Section 101(37) defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The Third Circuit has explained that a "lien" is:

a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation. It is distinct from the obligation which it secures. Mortgages, security interests, encumbrances and liabilities possess characteristics similar to a lien.

*Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 259–60 (3d Cir.2000) (internal quotations omitted). We concluded above that a right to withhold and stop delivery is not a security interest subject to Article 9 or its rules of priority. Therefore, the right to withhold and stop delivery is not a "lien" for purposes of section 363(f)(3). However, even if AVA's interest could be characterized as a lien, the sale price offered by KIAC is not sufficient to cover AVA's and BOA's claims.[5]

---

**4.** Section 2–702(3) subjects a seller's right to reclaim to section 2–403 which allows the sale to a good faith purchaser. There is no similar provision subjecting a seller's right to withhold and stop delivery to a sale to a good faith purchaser.

**5.** The price offered by KIAC for all assets was $96 million. BOA asserts it is owed $167

794

Section 363(f)(4) is of no avail to the Debtors because there is no bona fide dispute with respect to AVA's claim.

■ Section 363(f)(5) would allow the Debtors to sell the Parts free and clear of AVA's right to withhold and stop delivery if AVA could be compelled to accept a money satisfaction for its claim. Any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f)(5). *See, e.g., Folger Adam,* 209 F.3d at 259; *In re P.K.R. Convalescent Centers, Inc.,* 189 B.R. 90, 94 (Bankr.E.D.Va.1995); *In re WBQ Partnership,* 189 B.R. 97, 107 (Bankr.E.D.Va.1995). Section 2–702(1) permits AVA to refuse delivery of the Parts except for full cash payment for those goods and all goods previously delivered under the Agreement. U.C.C. § 2–702(1). If the Debtors tendered full payment in cash to AVA and it refused, the Debtors could compel AVA to accept that payment in satisfaction of its right to withhold and stop delivery of the Parts. Thus, we conclude that the Debtors may sell the Parts pursuant to section 363(f)(5).

AVA asserts that, if the Debtors have the right to sell the Parts to KIAC under section 363(f)(5), they must provide it adequate protection. Section 363(e) of the Bankruptcy Code provides that:

at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or *condition such use, sale, or lease as is necessary to provide adequate protection of such interest.*

11 U.S.C. § 363(e) (emphasis added). Section 361 of the Bankruptcy Code provides that:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) *requiring the trustee to make a cash payment* or periodic cash payments to such entity, to the extent that the ... use, sale, or lease under section 363 of this title ... results in a *decrease in the value of such entity's interest in such property.*

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361 (emphasis added).

AVA asserts it is entitled to adequate protection equivalent to its right to withhold and stop delivery of the Parts. Once the Debtors or their designees (KIAC) receive possession of the Parts AVA will lose its right to withhold and stop delivery. We agree. We conclude that adequate protection requires that the sale of the Parts free and clear of AVA's right to withhold and stop delivery be conditioned upon full payment in cash for all the Parts to be delivered under the Agreement, including the Parts theretofore delivered under the Agreement. *See, e.g., In re Spenlinhauer,* 231 B.R. 429, 436 (D.Me.1999) (bankruptcy court may condition sale of

million, while AVA asserts it is owed $2,312,000.

estate property to provide adequate protection to creditors).

## IV. CONCLUSION

For the reasons set forth above, the Debtors' Motion for Order Approving the Sale of the Parts in AVA's possession is granted but conditioned upon full payment in cash to AVA for all the Parts to be delivered under the Agreement, including the Parts theretofore delivered under the Agreement.

An appropriate Order is attached.

## ORDER

AND NOW, this **20TH** day of **AUGUST, 2002,** upon consideration of the Objection of American Valley Aviation to Kellstrom Industries, Inc.'s Motion for Order Approving Sale of Certain of Debtors' Assets, specifically, the P–3 Orion Parts in American Valley Aviation's possession, and for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the P–3 Orion Parts in the possession of American Valley Aviation may be sold by the Debtors only upon full payment in cash to AVA for all the P–3 Orion Parts to be delivered under the Sale and Purchase Agreement, including the Parts previously delivered under that agreement.