**In re HASKELL L.P., Debtor.**

No. 04–10876RS.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 11, 2005.

D. Ethan Jeffrey, Hanify & King, PC, Boston, MA, for debtor.

Daniel M. Glosband, Goodwin. Procter LLP, Boston, MA, for New England Baptist Hospital.

Paul D. Moore, Duane Morris LLP, Boston, MA, for Greenleaf VI, Inc.

## MEMORANDUM ON DEBTOR'S MOTION TO APPROVE SALE BY PUBLIC AUCTION OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the "Debtor's Motion to Approve (A) Sale by Public Auction of Real Property Free and Clear of Liens, Claims and Encumbrances and (B) Procedures for Sale" (the "Sale Motion"), through which Haskell L.P. (the "Debtor") seeks authority to sell by public auction its real property located at 69 Parker Hill Avenue, Roxbury, Massachusetts, together with all improvements, including any parking spaces (the "Property") used in connection with its operations, free and clear of the leasehold interest of New England Baptist Hospital ("NEBH"). NEBH filed an Objection to the Sale Motion together with the Affidavit of Janice Sullivan, the Director of Community and Government Relations and a 15–year employee of NEBH who is familiar with its opera-

tional needs and mission. The Court heard the Debtor's Sale Motion and NEBH's Objection on December 14, 2004. Prior to the hearing, the parties filed a Stipulation of Facts and Agreed to Exhibits with the respect to the Sale Motion. The Debtor also filed Memorandum and a Supplemental Statement of Legal Authority to which NEBH responded.

The issues presented are 1) whether the Debtor, pursuant to the provisions of 11 U.S.C. § 363(f), may sell its real estate free and clear of the leasehold interest of NEBH; 2) whether NEBH is entitled to its remedies under 11 U.S.C. § 365(h) where the Debtor is rejecting the lease under its Liquidation Plan; 3) whether NEBH is entitled to adequate protection of its leasehold interest pursuant to the provisions of 11 U.S.C. § 363(e) in the event the Court approves a sale, and if so, how is its interest adequately protected; and 4) whether the proposed sale must be denied because it is inconsistent with and contrary to the provisions of the applicable "Non–Disturbance Agreement."

## II. PROCEDURAL BACKGROUND AND FACTS

The material facts necessary to decide the Sale Motion are not in dispute. Based upon the record of proceedings in this case, the Court makes the following findings of fact.[1]

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this district on February 5, 2004, and has been operating as a debtor in possession since that time. On October 29, 2004, it filed a Liquidating Plan of Reorganization together with a Disclosure Statement, and a Motion for Order: (i)

Approving Disclosure Statement Relating to Liquidating Plan of Reorganization; (ii) Establishing Voting Record Holder Date; (iii) Approving Solicitation Procedures, Forms of Ballots, and Manner of Notice; and (iv) Fixing the Deadline for Filing Objections to Confirmation of the Plan and Scheduling Hearing on Plan Confirmation." The Debtor's Plan is predicated upon a public auction of the Property and the rejection of all executory contracts and unexpired leases not specifically assumed. The Court heard the Debtor's Motion for Order Approving the Disclosure Statement on November 30, 2004 and suspended approval of the Disclosure Statement pending further order of the Court. At the hearing, Debtor's counsel represented the NEBH Lease would be rejected under the Liquidating Plan. Nevertheless, determination of the Sale Motion must precede approval of the Disclosure Statement because, if this Court denies the Sale Motion, the Debtor's Disclosure Statement and Liquidating Plan would not be feasible.

The Debtor is a Massachusetts limited partnership, whose only limited partner is Wachovia Affordable Housing Community Development Corporation. The Debtor owns and operates a 76 bed assisted living facility located on Parker Hill Avenue in Roxbury, Massachusetts. According to NEBH, prior to the Debtor's acquisition of the Property, NEBH, in 1998, sold the Property to Sippican Partners, LLC for $1.2 million. Less than a year and a half later, Sippican Partners, LLC assigned its interests in the Property to Haskell House LLC, the Debtor's general partner.

On October 28, 1999, NEBH entered into a 99 year lease (the "Lease") with the Debtor pursuant to which NEBH was to

---

1. As noted, the parties filed a Stipulation of Facts and Agreed to Exhibits with respect to the Sale Motion through which they stipulated to the admissibility of 13 exhibits. Nei-

ther party requested an evidentiary hearing or the opportunity to present live testimony from witnesses at the December 14, 2004 hearing.

pay no fixed rent, but was to pay certain operating expenses and real estate taxes.[2] Under the Lease, NEBH has the right of first refusal to purchase the property. The Lease covers only a portion of the Property, specifically a short term stay facility and 60 parking spaces. The Lease was recorded in the Suffolk Registry of Deeds.[3] On October 11, 2000, the Lease was amended. Additionally on that date, Haskell House LLC assigned the Lease to the Debtor.

In October of 2000, the Debtor obtained mortgage financing from PFC in the sum of $11,700,000 to acquire and renovate the Property, which was insured by the United States Department of Housing and Urban Development ("HUD"). NEBH entered into a separate Subordination Agreement and Non–Disturbance Agreement with PFC and HUD. The parties agreed in Paragraph 3(b) of the Non–Disturbance Agreement that even though the option and the Lease are subordinate to the Mortgage, they "shall not be terminated, disturbed, affected or impaired by ... the foreclosure of the Mortgage or the enforcement of any rights under the Mortgage or any other documents held by the Lender or insured by Insurer, or by any judicial sale or execution or other sale of the Premises, or by any deed given in lieu of foreclosure, or by entry onto the Premises to become a mortgagee in possession ...." In addition, in Paragraph 6 of the Non–Disturbance Agreement, the parties

agreed that "[t]he Lease shall remain in full force and effect, regardless of who has legal title to the Premises...." Greenleaf VI, Inc. ("Greenleaf") is the successor in interest to HUD, which had succeeded to all of the rights and claims of PFC under the October of 2000 loan and mortgage.

In connection with the parties' agreements, NEBH has the right to repurchase the Property in 2039, with six months advance notice, for eighty percent of the then fair market value, or, at its election, if it chose not to exercise the option, the right to receive twenty percent of the sale proceeds obtained from an arms-length sale to a bona-fide purchaser. To secure performance of the option, Haskell House LLP granted NEBH a second mortgage and a security interest in personal property pursuant to an Amended and Restated Mortgage and Security Agreement.[4] The option provided that the second mortgage is subordinate to the current first mortgage and any other new first mortgage placed on the Property.

On October 11, 2000, NEBH executed a Confirmatory Deed in which Haskell House, LLC was identified as the Grantee for the purpose of correcting "certain matters contained within the Deed dated as of October 22, 1999 by Grantor and Grantee...." On the same day, Haskell House, LLC transferred its interest in the Property to the Debtor, "subject to a perpetual right and easement as appurtenant to and for the benefit of certain property of

---

2. The lease was between Haskell House, LLC and NEBH, not between the Debtor and NEBH.

3. In October of 1999, NEBH, as Lessee, and Realty Financial Partners IV Limited Partnership, as Lender, with the consent of Haskell House, LLC, as Lessor, entered into a Subordination, Attornment and Non–Disturbance Agreement.

4. The Amended and Restated Mortgage provided at ¶ 20:

> Notwithstanding anything to the contrary set forth herein, Mortgagee, for itself and its successors and assigns, covenants and agrees that all of its rights and powers under this Mortgage are subordinate and subject to the rights of PFC Corporation under that certain Mortgaged dated Oct 11, 2000[sic] and recorded contemporaneously herewith ....

Grantor's predecessor in title (New England Baptist Hospital) ... an option as appurtenant to and for the benefit of certain property of Grantor's predecessor in title (New England Baptist Hospital)...."

In addition to the Sale Motion, the Debtor filed a Motion for Authority to Reject Executory Contract with New England Baptist Hospital pursuant to which it sought to reject the option. Because counsel to NEBH represented at the December 14, 2004 hearing that it had no objection to the Motion for Authority to Reject, the Court granted the Motion.

Greenleaf has obtained an appraisal indicating that the market value of the Property is $6.5 million. As of the petition date, the Debtor owed Greenleaf approximately $13 million.

## III.  POSITIONS OF THE PARTIES

### A.  *The Debtor*

The Debtor maintains that it is entitled to sell the Property free and clear of NEBH's interest under the lease. According to the Debtor, because NEBH could be compelled to accept a money satisfaction in exchange for its leasehold interest in the Property, § 363(f)(5) permits it to sell the Property free and clear of NEBH's leasehold interest.[5] The Debtor contends that as long as it is hypothetically possible to compel NEBH to accept money for its interest, such as through an eminent domain taking by the government, § 363(f)(5) is satisfied, and it must be granted the authority to sell the Property free and clear of NEBH's interest under the lease.[6] In support of its argument, the Debtor cites a law review article, Basil H. Mattingly, "Sale of Property of the Estate Free and Clear of Restrictions and Covenants in Bankruptcy," 4 Am. Bankr.Inst. L.Rev. 431 (1996).

The Debtor further argues that § 365(h), which permits a tenant whose lease is rejected by a debtor/lessor to continue in its tenancy, or terminate the lease and file a claim for damages, at its election, does not prohibit the sale of the Property. The Debtor cites *Precision Industries, Inc. v. Qualitech Steel, SBQ, LLC,* 327 F.3d 537 (7th Cir.2003), and *In re Downtown Athletic Club of New York City, Inc.,* No. M–47 (JSM), 2000 WL 744126 (S.D.N.Y. June 9, 2000), in support of its contention that § 365(h) does not supersede § 363(f), which allows sales free and clear of leasehold interests. Finally, the Debtor insists that the requirement of adequate protection does not entitle NEBH to continued possession as a tenant, and that NEBH is adequately protected by its lien on the Property which will attach to the proceeds of the sale. Notwithstanding this assertion, the Debtor's attorney conceded at the hearing that it is unlikely that NEBH would receive any proceeds of a sale in light of the amount due to the mortgagee and to the City of Boston on account of real estate taxes.

### B.  *New England Baptist Hospital*

NEBH argues that the Debtor cannot satisfy the requirements of § 363(f)(5) because NEBH cannot be compelled to accept a money satisfaction for its leasehold interest. NEBH contends that the unre-

---

5.  As previously noted, NEBH did object to Debtor's Motion for Authority to Reject and did not dispute Debtor's right to sell the Property free and clear of the option or the right of first refusal. Its Objection is limited to the Debtor's authority to sell free and clear of its leasehold interest.

6.  The Debtor does not contend that any of the other subsections of § 363(f)(1)-(4) authorize it to sell the Property free and clear of NEBH's leasehold interest, limiting the basis for its authority to sell to § 363(f)(5).

butted representations made by Janice Sullivan in her Affidavit establish that it would be extremely difficult, if not impossible, to quantify the value of its tenancy. Moreover, NEBH insists that its leasehold interest must be adequately protected, which would require, in its view, continuation of its right to retain possession for the remaining term of the lease under § 365(h) of the Bankruptcy Code because its losses cannot be quantified. NEBH further argues that the Property cannot be sold free and clear of its interest under the Non–Disturbance Agreement and the Subordination Agreement, because § 510(a) of the Bankruptcy Code requires enforcement of such agreements.

## IV. DISCUSSION

### A. *Applicable Law*

Resolution of the dispute between the Debtor and NEBH requires a determination of the extent of the authority of a Debtor who is a lessor of real estate to sell property free of the leasehold interest of a tenant of the Property, which, in turn, requires an interpretation of the relationship of between § 363's provisions respecting sales and adequate protection and § 365's provisions protecting tenants whose leases are being rejected by a debtor/lessor.

■ Section 363(b)(1) of the Bankruptcy Code authorizes a trustee, and thus a debtor in possession, to sell property of the estate, other than in the ordinary course of business, after notice and a hearing. Subsection (e) of § 363 provides that, on request of an entity that has an interest in property proposed to be sold, the court shall prohibit or condition a sale of property "as is necessary to provide adequate protection of such interest." Section 363(f) permits the sale of property free and clear of an interest of an entity other than the estate where "such entity could be com-

pelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). The Bankruptcy Code does not provide a definition of "such interest." Many courts, however, have interpreted the term broadly to include possessory interests of tenants under leases. *See, e.g., In re Downtown Athletic Club of New York City, Inc.*, No. M—47, 2000 WL 744126, *4 (S.D.N.Y. June 9, 2000)(holding that under the expansive interpretation of interest, possessory rights of lessees fall within the scope of section 363(f), and *In re Taylor*, 198 B.R. 142, 162 (Bankr.D.S.C.1996))("it appears that a leasehold is a type of 'interest' that fits within the . . . statute").

■ Sales under § 363(f) are subject to the adequate protection requirement. According to one leading commentator, "[t]his generally means that if, under applicable law, the holder of the lien or interest could be compelled to accept a payment in exchange for its interest, the trustee may take advantage of that right by replacing the holder's lien or interest with a payment or other adequate protection." L. King, *Collier on Bankruptcy*, ¶ 363.06[6][a], at 363–51 (15th ed. Supp. 2004). Adequate protection may be provided by cash payments, additional or replacement liens, or such other relief as will result in the realization of the indubitable equivalent of such entity's interest in property. 11 U.S.C. § 361. "Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale." H.R.Rep. No. 595, 95th Cong. 1st Sess. 345–346 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6301–03, Congressional Record Statements.

■ Through § 365(h), Congress has afforded tenants of debtors who are les-

sors special protections in the event a debtor as lessor rejects a lease. Section 365 provides the trustee and debtors in possession with the right to reject executory contracts and unexpired leases. In the case of a Debtor/lessor's rejection of a lease, however, the power is limited and tenants are given two options: either treat the lease as terminated and make a claim for damages, or continue in possession and pay rent. Section 365(h) provides in pertinent part:

> If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—... (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease ... that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent such rights are enforceable under applicable non-bankruptcy law.

11 U.S.C. § 365(h).

A number of courts have considered whether these special protections come into play when the Debtor is selling the property under § 363 free an clear of the tenant's leasehold interest. A split in the case law has developed. *See generally* Michael St. Patrick Baxter, "Section 363 Sales Free and Clear of Interests: Why the Seventh Circuit Erred in Precision Industries v. Qualitech Steel," 59 Bus. L. 475 (2004); Christopher C. Genovese, "Precision Industries v. Qualitech Steel: Easing the Tension Between Sections 363 and 365 of the Bankruptcy Code?" 39 Real Prop. Prob. & Tr. J. 627 (2004). The courts of this circuit have not yet considered whether a sale by a debtor/lessor under § 363(f) terminates a tenant's lease-

hold. Several courts in other jurisdictions have ruled that the provisions of § 365(h) are the exclusive remedies of a debtor lessor, and the debtor cannot avail itself of the provisions of § 363 to sell property and extinguish a tenant's leasehold interest. *See, e.g., In re Churchill Props. III, L.P.*, 197 B.R. 283 (Bankr.N.D.Ill.1996); *In re Taylor*, 198 B.R. 142 (Bankr.D.S.C.1996); *In re LHD Realty Corp.*, 20 B.R. 717 (Bankr.S.D.Ind.1982). These courts rely on the legislative history to § 365(h) which evidences congressional intent to protect a tenant's estate when the landlord files bankruptcy and reason that a sale free and clear of a leasehold interest pursuant to § 363 would effectively enable a debtor to dispossess a lessee, negating the protections afforded by § 365 and contravening congressional intent. *In re Taylor*, 198 B.R. at 165–66.

In *Precision Industries, Inc., v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir.2003), the Court of Appeals for the Seventh Circuit adopted a different interpretation of the applicable sections of the Bankruptcy Code. The court upheld a bankruptcy court's order allowing a sale of real estate unencumbered by its tenant's interests as lessee. The court ruled that the tenant's interest in leased property did not survive the sale of the Debtor's real property free and clear of interests and the tenant's interest was extinguished notwithstanding the provisions of § 365(h). The court rejected the argument that the terms of § 365(h) supersede those of § 363(f) because neither section contained any indication that the broad right to sell free of any interest is subordinate to lessees' protections and because the two statutes addressed different events.[7]

---

**7.** The Court stated the following:
> [W]e conclude that the terms of section 365(h) do not supersede those of section 363(f).

> First, the statutory provisions themselves do not suggest that one supersedes or limits the other. Notably, sections 363 and 365 both contain cross-references indicating

The Seventh Circuit commented that where property under a lease is to be sold free and clear of a lessees' possessory interest, the lessee is entitled to adequate protection for its interest, and the bankruptcy court is obligated to ensure that a lessee's interest is adequately protected when the property is sold free and clear of the lease: " 'Adequate protection' does not necessarily guarantee a lessee's continued possession of the property, but it does demand, in the alternative, that the lessee be compensated for the value of its leasehold—typically from the proceeds of the sale. 327 F.3d at 548 (citing Steven R. Haydon and Nancy J. March, "Sale of Estate Property Free and Clear of Real Property Leasehold Interests Unwritten Limitation?," 19 Am. Bankr.Inst. J. at 22 & n. 5 (2002)); *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir.1935) (L. Hand, J.), and *La Jolla Mortgage Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 286 (Bankr.S.D.Cal.1982). The court added:

> that certain of their provisions are subject to other statutory mandates. *See* §§ 363(d), 365(a). But nowhere in either section 363(f) or section 356(h) is there a similar cross-reference indicating that the broad right to sell estate property free of "any interest" is subordinate to the protections that section 365(h) accords to lessees. The omission suggests that Congress did not intend for the latter section to limit the former.
> Second, the plain language of section 365(h)(1)(A) suggests that it has a limited scope. By its own terms, that subsection applies "[i]f the trustee [or debtor-in-possession] rejects an unexpired lease of real property . . . ." (Emphasis supplied.) Here what occurred in the first instance was a sale of the property that Precision was leasing rather than a rejection of its lease. Granted, if the Sale Order operated to extinguish Precision's right to possess the property—as we conclude it did—then the effect of the sale might be understood as the equivalent of a repudiation of Precision's lease. But nothing in the express terms of section 365(h) suggests that it applies to any

"Lessees like Precision are therefore not without recourse in the event of a sale free and clear of their interests. They have the right to seek protection under section 363(e), and upon request, the bankruptcy court is obligated to ensure that their interests are adequately protected." *Id.*

Similarly, in *In re Hill*, 307 B.R. 821 (Bankr.W.D.Pa.2004), a case involving a debtor/tenant whose father/landlord had also filed bankruptcy, the bankruptcy court ruled that a sale order which provided for a sale free and clear of all interests in property extinguished the debtor's leasehold interest in property that had been sold in his father's bankruptcy case. The court based its decision on the failure of the debtor and his father to object to the sale, thereby precluding a subsequent challenge to the order approving the sale.

B. *Analysis*

■ At the outset, the Court rejects the Debtor's argument that it need only

> and all events that threaten the lessee's possessory rights. Section 365(h) instead focuses on a specific type of event—the rejection of an executory contract by the trustee or debtor-in-possession—and spells out the rights of parties affected by that event. It says nothing at all about sales of estate property, which are the province of section 363. The two statutory provisions thus apply to distinct sets of circumstances. Third, section 363 itself provides for a mechanism to protect the rights of parties whose interests may be adversely affected by the sale of estate property. As noted above, section 363(e) directs the bankruptcy court, on the request of any entity with an interest in the property to be sold, to "prohibit or condition such . . . sale . . . as is necessary to provide adequate protection of such interest." Because a leasehold qualifies as an "interest" in property for purposes of section 363(f), a lessee of property being sold pursuant to subsection (f) would have the right to insist that its interest be protected . . . .
> 327 F.3d at 547–48 (citations omitted).

show that it is theoretically possible to compel a party to accept a money satisfaction of its interest and that the possibility of an eminent domain taking satisfies § 363(f)(5). First, the Debtor has failed to cite to any controlling or persuasive legal authority in support of its argument that § 363(f)(5) provides a hypothetical, not an actual, test. A review of the law review article cited by the Debtor in support of its argument reveals that the author who posits the "eminent domain" theory on which the Debtor relies appears to have formulated it without any supporting case law or other legal authority for his interpretation of § 363(f)(5). The possibility that a property can be taken by eminent domain, terminating a lease, and requiring that interests receive money compensation does not support authority to sell free and clear under § 363(f)(5).

The Court finds that the only logical interpretation of the language of § 363(f)(5) is that the statute requires that the trustee or the debtor be the party able to compel monetary satisfaction for the interest which is the subject of the sale. The focus of § 363(f)(5) is on whether the interest is reducible to a claim. In the leading decisions interpreting § 363(f)(5), courts examine whether the party with an interest in the property could be compelled to accept payment of money in satisfaction of the interest. See, e.g., In re Trans World Airlines, Inc., 322 F.3d 283 (3d Cir.2003); In re Kellstrom Industries, Inc., 282 B.R. 787 (Bankr.D.Del.2002); WBQ Partnership v. Comm. of Virginia Dept. of Medical Assistance Servs., 189 B.R. 97 (Bankr.E.D.Va.1995); In re Healthco International, Inc., 174 B.R. 174 (Bankr.D.Mass.1994). The decision in Healthco does not support the Debtor's position. In that case, the court ruled that the debtor could sell property free and clear of a tax lien for less than an amount sufficient to pay the lien in full, because, under § 1129 of the Bankruptcy Code, the lien could be subordinated to administrative expenses. Id. at 177. Although the court in Healthco referred to "satisfaction on a hypothetical basis," it did not adopt the theoretical possibility test proposed by the Debtor.

In the present case, NEBH could not be compelled to accept a money satisfaction of its claim for two reasons. First, the unrebutted evidence compels the conclusion that its claim cannot be quantified at this point in time. The Debtor has submitted no evidence to rebut NEBH's evidence in the form of Janice Sullivan's Affidavit that its losses are incapable of calculation. Moreover, it did not submit any rebuttal evidence, including the amount of any losses NEBH would sustain by virtue of the need for a replacement tenancy. Secondly, where the Debtor is rejecting the lease with NEBH, under its Liquidating Plan, NEBH has, at its option, the right to remain in the premises in accordance with § 365(h). NEBH cannot be compelled to accept money for its rejected lease under § 363(f)(5) in view of the provisions of § 365(h). From a review of the cases cited by the parties and the law review article referenced above, the Court is persuaded by the views espoused by the courts in Taylor and Churchill. If the Court were to grant the Debtor's Sale Motion, the provisions of § 365(h) would be eviscerated. In other words, the Debtor would be doing indirectly what it could not do directly, namely, dispossessing NEBH.

Moreover, the Debtor has not offered or provided adequate protection for NEBH's interest in the lease. Although adequate protection may consist of compensation for its loss, secured by some other interest, or continued possession, the Debtor has indicated that NEBH is adequately protected

by its lien on the Property which will attach to the proceeds of the sale. However, given the amount due to the first mortgagee, which is double the appraised value of the Property of $6.5 million, it is unlikely that NEBH will realize any amount on its second mortgage. Accordingly, this cannot constitute adequate protection for its interest. The Court finds that under the circumstances of this case adequate protection can only be achieved through continued possession of the leased premises.

In view of the Court's decision in favor of NEBH with respect to the interplay of §§ 363(f) and 365(h), the Court need not decide the issues of whether § 510 requires enforcement of the Subordination Agreement and the Non–Disturbance Agreement and whether § 510 is even applicable because the Subordination Agreement is separate from the Non–Disturbance Agreement, which contains the language that "[t]he Lease shall remain in full force and effect, regardless of who has legal title to the premises."

## V.  CONCLUSION

For the reasons stated above, the Court denies the Debtor's Sale Motion.