Order, Supreme Court, New York County (James A. Yates, J.), entered October 23, 2009, which denied plaintiffs’ application for a stay of arbitration and injunctive relief, unanimously affirmed, with costs.
In October 2008, plaintiff Madison Realty Capital, LP bought a shopping center in Michigan at a foreclosure sale. It subsequently assigned its rights therein to plaintiff 67500 South Main *487 Street, Richmond LLC.* The issue on this appeal is whether Madison purchased the property subject to an existing lease between former owner Richmond Realty LP (Richmond) and defendant MCANY of Richmond Fund II LP (MCANY).
Richmond acquired the shopping center from First Richborough Realty Corp (FRRC) in 1985. FRRC took a wraparound mortgage on the property, Richmond assigned revenue from the shopping center to FRRC, and FRRC agreed to pay all of the shopping center’s expenses. The lease commenced on August 1, 1985, and it was to terminate on December 31, 2023. It was recorded with the register of deeds in Macomb County, Michigan in December 1985. Also in 1985, FRRC sold its rights in the lease to a predecessor of MCANY, which assigned its rights to MCANY in 1994. Defendant Scarborough-St. James Corp. (SSJC) agreed to service the lease.
In December 2003, following a dispute between SSJC and FRRC and Richmond that resulted in Richmond taking over the management of the shopping center, both SSJC and FRRC filed chapter 11 petitions in the United States Bankruptcy Court for the Southern District of New York. In July 2004, Richmond obtained a $2 million mortgage loan from Warren Bank and Carmen LLC, and various agreements were made impacting mortgages on the property, including the FRRC mortgage and MCANY’s interests. On June 26, 2006, in settlement of the dispute, Richmond and MCANY entered into an amended and restated lease. The settlement agreement was approved by the Bankruptcy Court.
The amended lease broadly defines “Landlord” (i.e., Richmond) as the owner of the premises, and provides that “in the event of a sale, assignment, or transfer by any such owner of its interest in the Premises,” all “covenants and obligations [of Landlord] shall be binding upon each new owner of the Premises . . .” (1Í 15.02). It contains a subordination clause, which provides that the Intermediate Net Lease was “subject and subordinate to any mortgage placed upon the Premises by Landlord, provided that the loan documents provide that the Tenant’s possession pursuant to this Lease shall not be disturbed so long as Tenant is not in material and uncured default of the terms and provisions of this Lease” (H 6.01 [emphasis added]). It also contains a New York choice of law provision (H 18.12), and an arbitration clause requiring all disputes “arising out of or relating to this Agreement between the Parties hereto, their assignees, their affiliates, ... or agents, [to] be settled by arbitration *488 in New York City” administered by JAMS (1i 18.13). The amended lease was recorded in 2009.
Simultaneous with execution of the amended lease, MCANY and SSJC entered into a written servicing agreement which delineates SSJC’s authority to collect gross revenues and fulfill MCANY’s obligations under the lease. That agreement provides that in exchange for its services, SSJC is entitled to receive an annual fee “equal to the excess income” collected, over the amount of MCANY’s obligation to Richmond.
Unable to meet its obligations to Warren Bank and Carmen, in 2006, Richmond also filed a chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. Its case was jointly administered with the FRRC and SSJC cases, and all three debtors continued to operate as debtors in possession. Plaintiff Madison Realty Capital agreed to lend Richmond $3.1 million in exchange for a note and mortgage, in consideration of which Richmond agreed to provide security to Madison in the form of a superpriority lien and a collateral assignment and security interest in all “leases, rents and other income” of the shopping center. By order dated April 20, 2007, the Bankruptcy Court approved this debtor-in-possession (DIP) loan and granted Madison a perfected first-priority lien and superior interests in all Richmond’s assets and other property. The DIP order defined “Assets” as all unencumbered prepetition and postpetition property of Richmond, and granted Madison a “first priority, perfected security interest in and liens on all” of Richmond’s property (section 6 [b]) and “perfected priming liens” on Richmond’s assets, including such specified liens as those held by Warren Bank, Carmen, SSJC, FRRC, and MCANY (section 6 [c]).
In 2008, Richmond defaulted on the DIP loan, and Madison commenced foreclosure proceedings. SSJC attempted to find a substitute lender to take over Madison’s loan, and subsequently sought, unsuccessfully, to temporarily restrain the foreclosure sale. However, on October 24, 2008, Madison bought the shopping center at a foreclosure sale. Following the sale, Madison retained a company to act as a property agent, and instructed the tenants of the shopping center to make rent payments to the new property manager.
On May 8, 2009, SSJC demanded arbitration pursuant to paragraph 18.13 of the lease. It sought a declaration that the intermediate net lease survived the foreclosure, an order enjoining Madison from breaching the covenant of quiet enjoyment, and an award of consequential damages. Supreme Court issued a temporary restraining order (TRO) precluding Madison from *489 contacting the shopping center tenants, other than as provided in the lease, and from interfering with SSJC’s management of the center.
Madison removed the state court proceeding to Bankruptcy Court, and moved for an order staying the arbitration on the ground that that court had exclusive jurisdiction. It also sought to vacate the TRO and be granted injunctive relief consistent with the DIP order. The Bankruptcy Court denied the application on the ground that the interpretation of the DIP order was a matter of contract law, appropriately interpreted by either a Michigan state court or an arbitration panel, and declined to extend the TRO, which had dissolved by its own terms. Madison then moved in Supreme Court for a stay of arbitration and to enjoin defendants from taking actions, including collecting rents, with respect to the shopping center. The court denied the motion. We affirm, on the ground that Madison stepped into Richmond’s position as the owner and landlord of the shopping center pursuant to the terms of the lease when it foreclosed on the property. Accordingly, it is required to arbitrate the instant dispute.
Under Michigan law, applicable here, a lease recorded before a foreclosure is generally not extinguished if the foreclosure is accomplished through advertisement (as opposed to court action) (Mich Comp Laws Ann § 600.3204). When Madison purchased this shopping center, it did so in a foreclosure sale by advertisement (Mich Comp Laws Ann § 600.3204 [1]). Thus, the foreclosure per se did not extinguish the lease.
Moreover, Michigan law also provides that a foreclosing mortgagee takes its interest in property subject to all leases that were recorded prior to its mortgage and that it had constructive knowledge of (see First of Am. Bank W. Michigan v Alt, 848 F Supp 1343, 1347 [WD Mich 1993] [“the first interest holder to record takes priority, unless that individual has notice of a prior unrecorded interest”]). Here, the lease was recorded in 1985, before Madison’s mortgage was recorded in 2007. The record reveals that Madison had actual knowledge of both the amended lease and the servicing agreement, both of which were referenced in the Bankruptcy Court’s 2006 DIP order.
The Bankruptcy Court’s order, authorizing Richmond to enter into the loan agreement with Madison did not, either expressly or by necessary implication, result in subordination of defendants’ interests in the lease and related servicing agreement. As set forth in the motion papers requesting Bankruptcy Court approval pursuant to 1978 Bankruptcy Code (11 USC) § 364, Madison was granted a “superpriority lien” on the shopping center *490 and a collateral assignment and security interest in all “leases, rents, and other income” related to the shopping center (see 11 USC § 364 [c], [d]). Consistent with the motion papers, in the order, Richmond’s unencumbered “Assets” referred to its right to collect rents through MCANY under the terms of the lease. The order provided “adequate protection” to all prepetition secured lenders, including defendants, whose liens were diminished by the “priming liens” granted to Madison, as set forth in schedule 1 to the DIP motion. However, neither the order nor the motion papers indicate that the loan documents subordinated defendants’ leasehold interest. Further, defendants did not request protection for their leasehold interests since there was no indication that the order would affect them (see 11 USC § 363 [e]; § 364 [d]).
The loan documents did not provide for nondisturbance by Madison of MCANY’s possession, as required by the lease for effective subordination of the lease to a subsequent mortgage. In sum, Madison did not avail itself of the opportunity to expressly include the lease in the DIP order and loan documents as assets to be subordinated. Thus, at this juncture, to accept plaintiffs’ interpretation of the order would grant them greater interests than those described in the DIP motion, and would deprive defendants of their rights under the lease without their having had an opportunity to request adequate protection from the Bankruptcy Court (see 11 USC § 363 [e], § 365 [h]; In re Haskell L.P., 321 BR 1, 6 [Bankr D Mass 2005]).
As successors to Richmond’s status as landlord under the lease, plaintiffs are bound by the lease’s arbitration clause (see Matter of Lubin & Schlesinger [Scheinberg], 234 AD2d 203, 204 [1996], lv denied 89 NY2d 814 [1997]). With respect to their claim for injunctive relief, plaintiffs do not demonstrate that an eventual award would be rendered, ineffectual without a provisional remedy (CPLR 7502 [c]). Concur—Gonzalez, P.J., Moskowitz, Freedman, Richter and Román, JJ.

 For purposes of this appeal, Madison and 67500 South Main will be referred to collectively as either plaintiffs or Madison.